IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ARNOLD F. CARROLL,<br><br>                Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER<br>OF SOCIAL SECURITY<br><br>                Defendant. | Civil Action No. 3:09-3104-RMG-JRM<br><br><br><br>**REPORT AND RECOMMENDATION** |

       This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI").

## ADMINISTRATIVE PROCEEDINGS

       Plaintiff filed an application for SSI on August 20, 2004, alleging disability as of April 1, 2000. Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held on January 26, 2007, the ALJ issued a decision on August 31, 2007, denying benefits and finding that Plaintiff was not disabled. Plaintiff then requested review of the ALJ's decision, which the Appeals Council granted. The Appeals Council remanded the decision to the ALJ and another administrative hearing was held on August 29, 2008. (Tr. 1238-1261). On October 23, 2008, the ALJ issued his decision finding that Plaintiff was not disabled (Tr. 20-38) within the meaning of the Act because, under the vocational

guidelines promulgated by the Commissioner, Plaintiff remains able to perform work found in the national economy. See generally 20 C.F.R., Part 404, Subpart P, Appendix 2.

Plaintiff was thirty-eight years old at the time of the ALJ's decision. He has a high school education with two years of college, and past relevant work as a hair colorist and bookkeeper. Plaintiff alleges disability since April 1, 2000, due to insulin dependent diabetes mellitus, history of an autoimmune hemolytic anemia,[1] and diffuse back pain. (Tr. 28).

The ALJ found (Tr. 45-53):

1. The claimant has not engaged in substantial gainful activity since August 20, 2004, the application date (20 CFR 416.920(b) and 416.971 *et seq.)*

2. The claimant has the following severe impairments: insulin dependent diabetes mellitus, history of an autoimmune hemolytic anemia (in remission), and diffuse back pain (20 CFR 416.920(c))

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). The claimant is able to sit/stand/walk six hours each in an eight-hour workday, and is able to occasionally lift 20 pounds and frequently lift ten pounds. The claimant's fatigue from diabetes causes concentration deficits and limits him to unskilled work.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

---

[1] Autoimmune hemolytic anemia is "any of a large group of anemias involving autoantibodies against red cell antigents." Anemia is "reduction below normal in the concentration of erythrocytes or hemoglobin in the blood...." Dorland's Illustrated Medical Dictionary 77 (30th ed. 2003).

2

6. The claimant was born on [] and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 20, 2004, the date the application was filed (20 CFR 416.920(g)).

On October 1, 2009, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner. Plaintiff then commenced this action on November 30, 2009.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

**MEDICAL RECORD**

Pertinent portions of Plaintiff's extensive medical record are discussed below.

1.      Hemolytic Anemia

A bone marrow report dated May 14, 2001 revealed that Carroll had active hemolytic anemia. Tr. 477-479. He had a splenectomy in 2002. Tr. 461. In March 2004, a hematology report indicated that Plaintiff's hematocrit level was normal. Tr. 770. Plaintiff was hospitalized at Beaufort Memorial Hospital for two weeks in October 2004 for treatment of abdominal pain and nausea. His hematocrit levels were normal during his hospitalization. Tr. 551-552. On December 6, 2004, Dr. Uzair Chaudhary noted that Plaintiff's autoimmune hemolytic anemia had resolved and there was no evidence of recurrence. Tr. 674. Dr. Majd Chahin noted on June 13, 2005, that Plaintiff's hemolytic anemia had been in remission since his splenectomy. Tr. 461. Dr. Matthew Beldner and Dr. Chaudhary concurred in this assessment in July and August 2005. Tr. 347, 644. Dr. Chaudhary, however, also noted that Plaintiff suffered from splenosis[2] which might explain his left upper quadrant pain. Tr. 645. Laboratory testing showed that Plaintiff's hematocrit levels were at or near normal through November 2007. Tr. 275, 321, 732, 1070, 1156. In August 2008, Plaintiff was noted to continue to feel fatigued and tired. Dr. Chaudhary wrote that Plaintiff's hemolytic anemia was in remission, but he was concerned about myeloproliferative disease as Plaintiff had iron deficiency and thrombocytosis. Tr. 1159.

---

[2]Splenosis is "a condition in which multiple implants of splenic tissue are present throughout the peritoneal cavity." Dorland's at 1741.

2.    Diabetes

Plaintiff developed diabetes which was thought to have occurred as a result of steroid treatment for autoimmune hemolytic anemia. Tr. 330. Plaintiff's control of his blood sugar levels was inconsistent. See, e.g., Tr. 1040, 1085, 1095, 1124, 1151-1152, 1156. In September 2005, it was noted that Plaintiff had evidence of neuropathy and his sensation was decreased. Tr. 641. On August 8, 2006, Dr. Daniel Ripley wrote that Plaintiff's diabetes was uncontrolled despite compliance with diet and medications. Tr. 447-449. On November 16, 2006, Plaintiff was diagnosed with cellulitis of the abdominal wall. Tr. 440-441. In addition, Plaintiff was hospitalized twice in March 2007, once for fourteen days and once for five days, for treatment of left arm cellulitis from a blood draw site. Tr. 230, 242, 247. During a June 25, 2007 hospitalization it was noted that Plaintiff had a non-healing ulcer of his left upper extremity. Tr. 1004. An insulin pump was prescribed in the fall of 2007. Tr. 1064, 1082. Plaintiff was hospitalized from March 14 to March 26, 2008, for cellulitis in his right lower extremity, poorly controlled diabetes, and dehydration. Tr. 1124-1125. Examination in March and May 2008 revealed that Plaintiff's motor and sensory functions were intact. Tr. 1091, 1128. Plaintiff was hospitalized for diabetic ketoacidosis on March 19, 2009 (approximately five months after the ALJ's decision). Tr. 1188-1200.

3.    Back and Hip Pain

A pelvic CT scan on August 22, 2005 revealed bilateral avascular necrosis of the femoral heads. Tr. 648. On September 27, 2005, an MRI of Plaintiff's thoracic spine revealed mild degenerative changes centered about the mid to lower portions with degenerative disk disease at T7-T8. MRI of his lumbar spine showed mild multi-level spondylosis with an annular tear at 2-3, but no compressive sequelae. Tr. 632, 634. Beginning in November 2005, Plaintiff sought treatment

5

for back pain. Examinations revealed tenderness in Plaintiff's back and muscle spasms. See, e.g., Tr. 303, 493, 495, 497, 500-502, 1105. His strength, reflexes, motor control, and sensation were generally normal. See, e.g., Tr. 486, 1091, 1099, 1128. Plaintiff had a normal gait (see, e.g., Tr. 486, 1103), and straight leg raise testing was negative (see, e.g. ,Tr. 493, 495, 497, 501, 1103, 1105). On June 29, 2006, Plaintiff sought care at the Hampton Regional Medical Center emergency room for complaints of low back pain. Lumbar spine x-rays revealed that Plaintiff had 15 degree rotational dextroscoliosis in his mid-lumbar spine. Tr. 405-413. On August 2, 2006, Dr. Scott Strohmeyer (orthopedist) ordered an MRI. Tr. 486-488. On August 22, 2006, Dr. Strohmeyer wrote that the MRI revealed Plaintiff had severe facet disease at L5-S1 bilaterally, with a large facet cyst in the foramen, on the left. Early disc disease was noted at L4-5 and moderate disc disease at L2-3. He recommended that Plaintiff have a facet block at L5-S1. Tr. 485. Dr. Karen Eller treated Plaintiff for back pain beginning in August 2006. She administered injections and administered radio-frequency denervation. Tr. 490-498, 1038, 1102.

4.    Mental impairments

During an October 2004 hospitalization for various physical impairments, it was noted that Plaintiff did not appear anxious or depressed. Tr. 553. In August 2006, Plaintiff reported that his depression and anxiety were controlled with medication. Tr. 447. Two weeks later, Dr. Eller thought that Plaintiff had a flat affect and was poorly groomed, but Plaintiff reported he had no depression, was not suicidal, did not have anxiety, and did not have sleep disturbances. Tr. 501. In late 2007, Dr. Ripley noted that Plaintiff had a history of complaints of depression and anxiety. Tr. 1032-1033. In January 2008, it was noted that Plaintiff had a history of depression, but was independent in activities of daily living, was in no distress, was fully oriented, and had normal mood

6

and affect. Tr. 1099-1100. His medication for his mental impairments was changed. Tr. 1100. In April 2008, Plaintiff had a flat affect and depressed mood, was diagnosed with an adjustment reaction, and was referred to a mental health facility. Tr. 1095. In July 2008, Plaintiff sought mental health treatment at a community mental health center. Tr. 1162-1663. He was accepted for treatment, but there is no indication he returned for evaluation or treatment. Tr. 1163. In August 2008, Dr. Eller noted that Plaintiff reported no suicidal ideation, was not in acute distress, and was pleasant. Tr. 1101.

     5.    Other

During his October 2004 hospitalization, Plaintiff was diagnosed with probable pancreatitis. See Tr. 551. Plaintiff was hospitalized for acute pancreatitis on April 26, 2007. His gall bladder was removed. See Tr. 267-295. Plaintiff was hospitalized for viral meningitis from November 30 to December 2, 2008 (after the ALJ's decision). Tr. 1179-1180. From March 8 to 17, 2009, Plaintiff was hospitalized at the Hampton Regional Medical Center for abdominal pain, pancreatitis, gastroenteritis, diabetes, and pneumonia. Tr. 1181-1183.

     6.    State Agency Opinions

In November 2004, Dr. Kevin King, a state agency psychologist, reviewed Plaintiff's medical records and assessed the severity of Plaintiff's medical impairment. Dr. King opined that Plaintiff had an affective disorder, but the impairment was not severe as it caused only mild limitations and no episodes of decompensation. Tr. 739-751.

In January 2006, Dr. Joyce Lewis, a state agency physician, reviewed Plaintiff's medical records and assessed his physical residual functional capacity ("RFC"). Dr. Lewis opined that Plaintiff could perform light work with occasional postural activities. Tr. 511-514.

HEARING TESTIMONY

At the first hearing, Plaintiff testified that his past work was as a bookkeeper, vending machine operator, hair colorist, and an actor. Tr. 1218-1221. His bookkeeping experience involved helping his mother do her monthly report for her vending machine sales. The report, which took him about one and one-half hours to complete, consisted of totaling sales and sales tax amounts. Tr. 1218 and 1222. He stated that he stopped working due to his symptoms of automimmune hemolytic anemia and back pain. Tr. 1221. Plaintiff said that he could not use his hands or arms, could only stand for three to five minutes, and could not sit for very long. Although he could use a computer, he could not often do so. He said he had depression, but had not been treated by a psychiatrist. Tr. 1224. Plaintiff claimed to have problems with attention and concentration. Tr. 1229. He testified that his medication made him sleepy and he had to take a nap every day. His medications also caused nausea, sweating, and itching. Tr. 1232-1233. Plaintiff testified that his brother did the chores around the house. He said that he only attempted to make his bed, watched television, and went to church (although he could not sit there long). Tr. 1234. Plaintiff denied having back surgery. Tr. 1236.

Plaintiff testified that he drove to the second hearing. Tr. 1242. He said he was fatigued and had to stay in bed most of the time. Tr. 1244. Plaintiff said he could not work because his back was "so bad" and his hands were "crooked." Tr. 1247. He testified he had begun treatment for depression, and had taken medication for some time. Tr. 1248-1249. Plaintiff said that his hypertension was under good control with medication, and medication did not help his pain completely. Tr. 1250. He reported he had been using a cane for two years because dizziness caused him to be unstable. Tr. 1258. Plaintiff testified that he suffered from extreme fatigue that caused

8

him to spend most of the day in bed. Tr. 1243-1244. To obtain relief from leg swelling he wore hose, elevated his legs, and took a pill to help with the fluid. Tr. 1247. Plaintiff's brother testified that Plaintiff spent most of the day in bed, he had to help Plaintiff put on socks and shoes, and he had to stay near the bathroom when Plaintiff showered because Plaintiff had fallen twice. Tr. 1258-1260.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ failed to properly consider the opinions of his treating and evaluating physicians; (2) the ALJ failed to consider all of his severe impairments and to consider the combined effect of all of his impairments; (3) vocational testimony was required to deny his application at step five of the sequential evaluation process;[3] and (4) the ALJ failed to properly assess his credibility. The Commissioner contends that substantial evidence[4] supports the final decision that Plaintiff was not disabled within the meaning of the Act.

---

[3] In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

[4] Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

9

A.     Severe Impairments

Plaintiff asserts that the ALJ did not consider all of his "severe" impairments including his history of depression and anxiety and his "extensive history of various illnesses." The Commissioner argues that the ALJ was reasonable in finding that Plaintiff's other impairments were not severe.

It is the claimant's burden to show that he had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 145 n. 5 (1987). A non-severe impairment is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).   "Basic work activities" means:

> The abilities and aptitudes necessary to do most jobs.  Examples of these include –
>
>> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>> (2) Capacities for seeing, hearing, and speaking;
>> (3) Understanding, carrying out, and remembering simple instructions;
>> (4) Use of judgment;
>> (5) Responding to supervision, co-workers and usual work situations; and
>> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).  An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

Here, the ALJ properly considered Plaintiff's other impairments, including his depression and anxiety, and determined that they were not severe impairments.   As Plaintiff had been diagnosed with mental impairments, the ALJ conducted an analysis to determine the effect of the mental impairments on Plaintiff's ability to work. Tr. 26-27. He specifically found that Plaintiff had mild

10

limitation in activities of daily living, as he was able to drive, cook, wash clothes, watch television, play video games, go out with and visit friends and relatives, take care of personal grooming, attend church, and help his mother. Tr. 26; see Tr. 164-169, 1234. Plaintiff was independent in daily living. Tr. 1099. These activities also provide substantial evidence for the ALJ's conclusion that Plaintiff had only mild limitations in social functioning. Tr. 27. Examinations revealed that Plaintiff was alert and oriented, which supported the ALJ's conclusion that Plaintiff had only mild limitations in concentration, persistence, and pace. Tr. 27; see, e.g. Tr. 430, 1099-1100. Plaintiff cites medical records which he claims show that he had a severe mental impairment. The records from prior to the ALJ's decision, however, only show that Plaintiff received medication for anxiety and depression, and he visited a mental health center on one occasion. See Tr. 551, 589, 1006-1007, 1032-1033, 1131, 1162-1163. There is nothing to show more than mild limitations, as described by the ALJ.

Plaintiff also argues that his extensive history of various illnesses would be a severe impairment. He has, however, not shown that any other impairment was severe. The ALJ also considered all of Plaintiff's impairments in combination in determining that Plaintiff did not meet or equal one of the listed impairments (20 C.F.R. Pt. 404, Subpt. P, App. 1) and in determining Plaintiff's RFC. See Tr. 27-37.

    B.    Credibility

Plaintiff argues that the ALJ failed to correctly assess his credibility and subjective allegations of disabling pain as he dismissed his credibility without an explanation. He also argues that the ALJ misstated evidence by ignoring neuropathy findings and stating that Plaintiff's back condition was mild when the treating physician indicated MRI review showed it was severe. The Commissioner contends that the ALJ reasonably found that Plaintiff was not credible because the

11

medical record supports the ALJ's findings, the ALJ noted that there were inconsistencies which undermined Plaintiff's credibility, and Plaintiff's allegations were inconsistent with his reported activities of daily living.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a claimant's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence. The ALJ properly considered the medical and non-medical evidence in considering Plaintiff's credibility. The ALJ also discounted Plaintiff's credibility based on inconsistencies in the record. The Fourth Circuit has held that it is proper for an ALJ to consider the inconsistencies between a claimant's level of treatment received and his claims of disabling symptoms. See Mickles v. Shalala, 29 F.3d at 930. The ALJ reasonably found Plaintiff's testimony that he used a cane regularly was inconsistent with the record (Tr. 36), including that in May and August 2008, his physicians did not

note the use or need for a cane and that he did not report any problems with his musculoskeletal system in June 2007 (Tr. 780, 1259). Plaintiff testified at the second hearing that he had back surgery in 2004, but he denied having back surgery in a previous hearing, and there was nothing in the record to show any evidence of a back surgery.[5] See Tr. 36, 1236, 1257. Additionally, Plaintiff's reported activities of daily living also support the ALJ's decision to discount Plaintiff's credibility. Plaintiff was able to drive, cook, wash clothes, watch television, play video games, go out with and visit friends and relatives, take care of his personal grooming, attend church, and help his mother. Tr. 164-169, 1234; see Johnson, 434 F.3d at 658.

### C.      Treating Physician

On January 22, 2007, Dr. Eller completed a Medical Source Statement (Physical). Tr. 297-299. She opined that because of intractable pain in Plaintiff's lower back and that he was status post fusion, he was only able to lift a maximum of ten pounds, stand or walk for four hours in an eight-hour day and one hour without interruption, and sit for four hours in an eight-hour day. Dr. Eller thought that Plaintiff should never climb, balance, stoop, crouch, kneel, and crawl due to a failed back surgery and increased pain with these maneuvers. She opined that Plaintiff had physical limitations in reaching and pushing/pulling due to failed back surgery. Additionally, Dr. Eller wrote that Plaintiff had environmental limitations as to heights, moving machinery, and vibration because the medication he took could impair his reflexes. Tr. 297-299.

---

[5] Plaintiff admits that records regarding a spinal surgery do not appear in the transcript. Plaintiff's Brief at 21.

On August 25, 2008, Dr. Derrick wrote that he had treated Plaintiff for close to two years. He noted that Plaintiff had several medical conditions, including diabetes, neuropathy, and significant osteoarthritis. Dr. Derrick opined that Plaintiff needed to be considered for disability. Tr. 1166.

Plaintiff alleges that the ALJ erred in weighing the opinions of these treating physicians. He argues that the ALJ should have recontacted these treating sources to resolve any ambiguities and to obtain additional information.[6] The Commissioner contends that the ALJ properly considered and assigned appropriate weight to these physicians' opinions.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

---

[6]Although an ALJ must recontact a medical source when the evidence is inadequate for the ALJ to determine whether the claimant is disabled, see 20 C.F.R. § 404.1512(e), it was not the case here. "[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty." White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001) (citing 20 C.F.R. § 404.1512(e); alterations in original). Further, contrary to Plaintiff's argument, the ALJ was not required to obtain additional evidence here as the evidence submitted by Plaintiff was not inadequate. See Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)(noting that this duty arises when the evidence submitted by the claimant is inadequate).

14

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount Dr. Derrick's opinion is supported by substantial evidence. First, Dr. Derrick only stated that Plaintiff should be "considered" for disability.[7] The ALJ did just that. Although there is at least one record indicating that Plaintiff had neuropathy (Tr. 641), there are numerous records indicating that Plaintiff's sensation was normal and intact (Tr. 486, 1091, 1099, 1128). Further, Dr. Derrick did not specify any limitations that would affect Plaintiff's ability to work or that would preclude Plaintiff from performing the full range of light work.

The ALJ's decision to discount Dr. Eller's opinion is not supported by substantial evidence. The Commissioner argues that the ALJ properly assigned little weight to Dr. Eller's opinion because Dr. Eller's treatment notes did not support her opinion and because she based her opinion on the

---

[7]Further, any conclusory opinion of disability is not controlling since the issue of disability is the ultimate issue in a Social Security case and the issue is reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)(statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir.1984).

15

presumption that Plaintiff had failed back surgery with increased pain where there was no evidence in the record that Plaintiff had back surgery. Even if Dr. Eller's back surgery references are incorrect, she also said that her restrictions were supported by Plaintiff's intractable pain, his increased pain with load bearing, spasms, increased pain with certain maneuvers, and that his medications could impair his reflexes. She specifically noted that the limitations were to the degree normally expected from the severity of Plaintiff's condition and that the diagnoses were confirmed by objective findings. Tr. 298-299. Further, the ALJ did not articulate his reasons for finding that Dr. Eller's own records did not support her findings. Her notes consistently report that she found muscle spasms, that Plaintiff reported pain, and that she administered epidural injections and radio-frequency denervation. Further, the ALJ may have discounted Dr. Eller's opinion (which appears to be that Plaintiff could only perform a range of sedentary work) because the ALJ found that the objective evidence of record showed that Plaintiff's back impairment was "mild." See Tr. 36, The ALJ, however, does not appear to have considered the August 22, 2006 note from Dr. Strohmeyer that Plaintiff's most recent MRI showed "severe" facet disease at L5-S1 and moderate disc disease at L2-L3. Tr. 485. Thus, it is recommended that this action be remanded to the ALJ to consider Dr. Eller's opinion in light of all of the evidence.

    D.    <u>Grids/Vocational Expert Testimony</u>

Plaintiff argues that vocational testimony was required to deny his application at step five of the sequential evaluation process because he suffers from nonexertional impairments which preclude the use of the Grids. He argues that his nonexertional impairments included his mental impairments, absenteeism due to his chronic illnesses, weakness, fatigue, dizziness, dyspnea, frequent fevers, intermittent skin rash, numerous infections, nausea, and diarrhea. Additionally, he

argues that he was on a large number of medications, some of which would be expected to produce side effects. Plaintiff also argues that a normal work routine would be disrupted by his brittle diabetes which required an insulin pump, required him to check his blood sugar frequently, and required him to adjust his food intake in an attempt to maintain his sugar level. The Commissioner contends that the ALJ reasonably found that Plaintiff retained the RFC to perform unskilled light work and properly applied the Grids because the ALJ concluded that Plaintiff had no additional limitations either exertional or nonexertional.

When a claimant: (1) suffers from a nonexertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the Grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985); Cook v. Chater, 901 F. Supp. 971 (D.Md. 1995). A nonexertional impairment is an impairment which is present whether the claimant is attempting to perform the physical requirements of the job or not. See Gory v. Schweiker, 712 F.2d 929 (4th Cir. 1983); see also 20 C.F.R. § 404.1569a. Every nonexertional condition does not, however, rise to the level of a nonexertional impairment. The proper inquiry is whether there is substantial evidence to support the finding that the nonexertional condition affects an individual's residual capacity to perform work of which he is exertionally capable. Walker, 889 F.2d at 49; Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984).

Here, substantial evidence does not support the ALJ's use of the Grids. As discussed above, it is unclear that the ALJ considered all of the medical evidence such that it is not possible to

17

determine whether Plaintiff could perform the full range of light work in light of all of the evidence. Additionally, the ALJ does not appear to have considered the side effects of all of Plaintiff's medication. Finally, the record contains records of numerous hospitalizations from Plaintiff's multiple medical impairments. As pointed out by Plaintiff's counsel at the second hearing before the ALJ (Tr. 1242), Plaintiff was hospitalized for approximately 36 days in 2007 and had already spent 14 days in the hospital up to August 2008. The ALJ does not appear to have consider the effect of this absenteeism on Plaintiff's ability to perform the full range of light work. The record also contains numerous problems related to Plaintiff's diabetes, some of which may be non-exertional. It is recommended that this action be remanded to the ALJ to consider whether Plaintiff can perform significant gainful activity in light of all the evidence of his exertional and nonexertional impairments.

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to consider the opinion of Plaintiff's treating physician (Dr. Eller) in light of all of the evidence and to continue the sequential evaluation process. In doing so, the ALJ should consider the effects of all of Plaintiff's impairments (both exertional and nonexertional).

RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

February 14, 2011
Columbia, South Carolina